UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HAYDEN LAKE RECREATIONAL WATER AND SEWER DISTRICT, a political subdivision of the State of Idaho, | Case No. 2:11-cv-264-CWD |
| Petitioner, | and |
| v. | Case No. 2:11-cv-00284-CWD |
| HAYDENVIEW COTTAGE, LLC, an Idaho limited liability company; JOSEPH W. SKALA, an individual; BY THE LAKE ASSISTED LIVING HOMES, LLC, an Idaho limited liability company; 356, LLC, a dissolved Idaho limited liability company; and LAURENCE A. CHMURA and KATHLEEN M. CHMURA, husband and wife, | (Consolidated)  **MEMORANDUM DECISION AND ORDER** |
| Respondents. | |
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | |
| Plaintiff, | |
| v. | |
| HAYDEN LAKE RECREATIONAL WATER AND SEWER DISTRICT, a political subdivision of the State of Idaho, | |
| Defendant. | |

**MEMORANDUM DECISION AND ORDER - 1**

## INTRODUCTION

Before the Court are three motions for summary judgment filed by the parties in two related cases which were joined for the purpose of proceeding before a single judge on September 7, 2011.[1] (Dkt. 14.) In the first case, (2:11-cv-00264-CWD), Hayden Lake Recreational Water and Sewer District (the "District") asks the Court to grant summary judgment on two issues: (1) whether the District may, in accordance with state law, increase sewer fees charged to two assisted care facilities located within its district; and (2) whether the District's attempt to increase the fees of the two assisted living facilities violated the Fair Housing Act. (*Pet.'s Mot. for Sum. J.*, Case No. 2:11-cv-00264, Dkt. 15.)

In the second case, (2:11-cv-00284-CWD), Intermountain Fair Housing Council, Inc., ("IFHC"), a non-profit organization dedicated to advancing equal access to housing, brought an action against the District, alleging that the District's attempted increase in sewer fees charged to the assisted care facilities – Haydenview Cottage Assisted Living

---

[1]  In the order consolidating the cases, the Court reserved ruling on the question of whether the cases would be joined for the purposes of hearings and trial under Fed. R. Civ. P. 42(a)(1), or consolidated into a single case pursuant to Fed. R. Civ. P. 42(a)(2). (Case No. 2:11-cv-00284-CWD, Dkt. 14.) After fully reviewing the record in both cases, because the cases involve common parties, common facts, and common questions of law, and because the Court has determined that Intermountain Fair Housing Council – who objected to consolidation of the cases into a single case – will not suffer any prejudice by virtue of consolidation under Fed. R. Civ. P. 42(a)(2), the cases will be consolidated into a single case for all purposes.

**MEMORANDUM DECISION AND ORDER - 2**

("Haydenview")[2] and By the Lake Assisted Living Homes ("By the Lake")[3] – violated the Fair Housing Act. The District filed a motion for summary judgment regarding IFHC's claims. (Case No. 2:11-cv-00284-CWD, Dkt. 28.) The District's motion is nearly identical to its motion for summary judgment filed in the first case, arguing that the Court should declare as a matter of law that the increase in fees does not violate the Fair Housing Act, and raising the additional argument that IFHC lacks standing. In response, IFHC filed a cross motion for summary judgment, arguing that it is entitled to judgment as a matter of law on its claims against the District. (Case No. 2:11-cv-00284-CWD, Dkt. 27.)

The parties presented oral arguments on the motions for summary judgment on November 17, 2011. Prior to the hearing, the District filed motions to strike in both cases.[4] All the motions now have been fully briefed and are ripe for adjudication.

## FACTUAL BACKGROUND

The material facts in this case are largely undisputed. The Hayden Lake Recreational Water and Sewer District is a municipal entity created for the purpose of providing water and sewer services to users within the District's geographic boundaries.

---

[2] Haydenview is owned by Rebecca Skala and referred to by the District as the "Skala Parcel."

[3] By the Lake is owned by Lawrence and Kathleen Chmura and referred to by the District as the "Chmura Parcel."

[4] *See Pet.'s Mot. to Strike*, Case No. 2:11-cv-00264-CWD, Dkt. 26; and *Def.'s Mot. to Strike*, Case No. 2:11-cv-00284-CWD, Dkt. 36.

**MEMORANDUM DECISION AND ORDER - 3**

In 1989, the District approved Ordinance 89-2, which, among other things, provides for the allocation of operation and maintenance ("O&M") expenses to users and for capitalization fees. Under the Ordinance, a capitalization fee is a one-time fee paid by a user for the fair share of the cost of constructing the infrastructure that supports the District's sewer services. O&M expenses are fees assessed to the District's users on a monthly basis. The Ordinance provides a system for calculating capitalization fees and O&M charges.

The Ordinance uses a unit of measurement known as an "Equivalent Residence," which the Ordinance defines as "[t]he basic unit of measurement utilized by the District to establish relative waste water disposal requirements of various property uses, with one (1) Equivalent Residence or 'ER' being defined as one (1) typical single-family residence." (Hayden Lake Rec. Water and Sewer Dist. Ordinance No. 89-2, Dkt. 25-1.) The Ordinance also contains a schedule for non-residential users, which seeks to approximate water use by assigning an ER factor to a particular user based on certain factors. The validity of Ordinance 89-2 is not at issue in this case. The District's interpretation and application of the Ordinance is, however, one of the main issues in this case, and the specific provisions of the Ordinance will be discussed in more detail below.

A.    *By the Lake Assisted Living Homes*

By the Lake is a privately-owned for-profit assisted care facility located in Hayden, Idaho, within the geographic boundaries of the District and subject to Ordinance 89-2. The facility is located in a 4,700 square foot single family residence, constructed in

**MEMORANDUM DECISION AND ORDER - 4**

1996, and operated as an assisted care facility for the elderly since 1997. (*Aff. of Kathleen Chmura*, Case No. 11-cv-284, Dkt. 27-1, ¶ 2.) It appears undisputed that at least some of By the Lake's residents are disabled. The building permit issued for the property by the County in 1996 reflects that the dwelling was built as a group home with an occupancy load of 17 persons. (*Id*. at 6.) The permit contains a notation that the building will house "8 or fewer residents." (*Id*.) The District alleges that By the Lake currently houses twelve patients. (*Statement of Material Facts in Supp. of Def.'s Mot. for Sum. J.*, Case No. 11-cv-284, Dkt. 25 at 4.) IFHC alleges that By the Lake "historically has housed on average 8-9 residents who are elderly, disabled adults most of whom suffer from dementia." (*Aff. of Kathleen Chmura*, Case No. 11-cv-284, Dkt. 27-1, ¶ 3.)

The District began supplying sewer services to the By the Lake property in 1996 pursuant to a permit issued to the prior owner of the property. The permit issued by the District states that it was "good for 1 Equivalent Residence (ER) only, up to 250 gallons per day," and that, "[a]fter 1 year the District will review water meter usage and may charge an additional capitalization fee if water usage exceeds the Districts definition of 1 ER." (*Statement of Material Facts in Supp. of Def.'s Mot. for Sum. J.*, Case No. 11-cv-284, Dkt. 25 at 3-4.) The District concedes that the contemplated follow-up review was not conducted. (*Id*. at 4.)

B.    *Haydenview Cottage Assisted Living*

Haydenview is a privately-owned for-profit assisted care facility located in Coeur d'Alene, Idaho, within the geographic boundaries of the District and subject to Ordinance

89-2. The Haydenview facility is licensed to hold up to eight patients and IFHC asserts that the facility currently houses seven disabled elderly residents. Haydenview has operated as an assisted care facility for handicapped adults since the mid-1990's and has been assessed sewer fees by the District at a rate of one ER since its inception.

      C.    *Dispute over increased fees*

In August of 2008, the District became aware of an assisted care facility (unrelated to the present litigation) that had been assessed one ER and had purportedly underpaid for its share of use of the District's services. Specifically, the District received a notice from the Kootenai County Building and Planning Department that a request had been made by an assisted care facility to increase its occupancy limit from eight to sixteen persons. (*Statement of Material Facts in Supp. of Def.'s Mot. for Sum. J.*, Case No. 11-cv-284, Dkt. 25 at 5.) In response to the information supplied by the County, the District alleges that it began reviewing the ER assessments for other commercial businesses, focusing on the type of business already identified as having underpaid – assisted care facilities. (*Id.*) Upon review, the District identified By the Lake and Haydenview as facilities that had not paid the appropriate amount under Ordinance 89-2.

On March 29, 2010, the District sent demand letters to By the Lake and Haydenview, expressing the view that neither facility had paid capitalization fees or monthly O&M charges in accordance with Ordinance 89-2, and demanding back payment. In its letter to By the Lake, the District noted that the facility was licensed for twelve beds and that, under Ordinance 89-2, the facility owed $66,600 in capitalization

**MEMORANDUM DECISION AND ORDER - 6**

fees and $7,992 in back-payments for monthly O&M charges. (*Aff. of Kathleen Chmura*, Case No. 11-cv-284, Dkt. 27-1 at 8-9.) In its letter to Haydenview, the District noted that the facility was licensed for eight beds and that under the Ordinance the facility owed $41,400 in capitalization fees and $6,624 in O&M fees. (*Aff. of Rebecca Skala*, Case No. 11-cv-284, Dkt. 27-2 at 7-8.) In total, the District demanded $74,592 from By the Lake and $48,024 from Haydenview. The letters threatened legal action if payment was not made within 30 days, including the filing of a lien against the properties and initiating foreclosure proceedings.

In response, on June 8, 2010, By the Lake and Haydenview sent a letter to the District formally requesting an accommodation under § 3604(f)(3)(B) of the Fair Housing Act. (*Aff. of Rebecca Skala*, Case No. 11-cv-284, Dkt. 27-2 at 9.) The letter requested that the District recognize both facilities "as single-family residences and assessed . . . charges at the rate charged single-family residences, consistent with the provisions of Idaho Code § 67-6531 and Kootenai County Ordinance 401." (*Id*.) The letter further stated that "[t]he purpose of accommodation is to make housing occupied by the elderly and disabled no more expensive, and thus less desirable, than similar properties occupied by non-disabled persons." (*Id*.)

On July 6, 2010, the District sent a "Settlement Offer and Proposal for Reasonable Accomodation [sic]" to By the Lake and Haydenview. (*Id*. at 10.) The District proposed that the facilities be charged based upon their actual usage. In Haydenview's case, the District proposed a back payment of $27,300 (approximately $20,000 less than its

**MEMORANDUM DECISION AND ORDER - 7**

original demand). (*Id*. at 13.) As to By the Lake, the District proposed a back payment of $17,850 (approximately $56,000 less than its original demand). (*Id*.)

By the Lake and Haydenview rejected the District's proposal, and on September 21, 2010, the District filed a petition for declaratory judgment in Idaho state court against Haydenview, By the Lake, and the individual owners of the two facilities. In its petition, the District sought a judicial determination that it may legally readjust the ER factors attributable to the two facilities under Ordinance 89-2. The District filed a motion for summary judgment on the issue, which the state court denied without analysis, and the District filed an amended petition seeking a declaration that the proposed increased fees did not constitute unlawful discrimination under the Fair Housing Act. (*See Order Denying Mot. for Sum. J*., Case No. CV 10-8145 (Idaho Dist. Ct., First Dist. Kootenai County, April 11, 2011) attached to *Notice of Removal*, Case No. 2:11-cv-00264-CWD, Dkt. 1-7 at 22.)

On June 6, 2011, By the Lake and Haydenview removed the case to federal court and the case was assigned to the undersigned magistrate judge. (*Notice of Removal*, Case No. 2:11-cv-00264-CWD, Dkt. 1.) Then, on June 17, 2011, IFHC filed a verified complaint against the District in federal court, and the case was randomly assigned to United States Magistrate Judge Ronald E. Bush. (*Verified Compl. and Demand for Jury Trial*, Case No. 2:11-cv-00284-REB, Dkt. 1.) On September 7, 2011, the undersigned partially granted the District's motion to consolidate the two cases, ruling that the cases would proceed before a single judge, but, based upon IFHC's objection, the Court

**MEMORANDUM DECISION AND ORDER - 8**

reserved ruling on the question of whether the cases would be joined only for the purposes of hearings and trial (but remain separate cases) under Fed. R. Civ. P. 42(a)(1), or consolidated for all purposes under Rule 42(a)(2). (*Order*, Case No. 11-cv-264, Dkt. 14.) Following the order of consolidation, the District moved for summary judgment in both cases and IFHC filed a cross motion for summary judgment in the case that was originally assigned to Judge Bush.[5]

## DISCUSSION

### 1.    Legal Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986).  "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a

_____

[5]  The parties in both cases have consented to proceed before a U.S. Magistrate Judge. (Dkt. 10 in Case No. 2:11-cv-00264-CWD and Dkt. 20 in Case No. 2:11-cv-00284-CWD.)

**MEMORANDUM DECISION AND ORDER - 9**

genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P. 56(e)).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Liberty Lobby, Inc.*, 477 U.S. at 248. On the other hand, "[i]f the determination of the case rests on which competing version of the facts or events is true, the case should be submitted to the trier of fact." *Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Assoc. Inc.*, 192 F. Supp. 2d 1344, 1347 (M.D. Fla. 2002).

Finally, the fact that both parties file motions for summary judgment, as they have in this case, does not alter the analysis under Rule 56; the court must consider each motion separately, with care taken to draw all reasonable inferences in favor of the nonmoving party. *Fair Housing Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 10**

2.      **Standing**

The District moves for summary judgment on the ground that IFHC lacks standing. (*Mem. in Sup. of Def.'s Mot. for Sum. J.*, Case No. 11-cv-284, Dkt. 22.) The gist of the District's argument is that IFHC should not be allowed to manufacture standing merely by taking a case in which the parties were already represented by counsel, incurring litigation costs, and claiming that the organization's mission was frustrated. For the reasons set forth below, the Court concludes, however, that IFHC has sufficiently demonstrated standing as an organization under the analysis set forth by the United States Court of Appeals for the Ninth Circuit.

To establish standing under Article III of the Constitution, a plaintiff must demonstrate that it has suffered an "injury in fact," defined as "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There also must be a causal connection between the injury and the defendant's conduct, and the injury must be redressable by a favorable decision. *Id.* at 561.

An organization may establish a sufficient injury in fact if it substantiates by affidavit or other specific evidence that the challenged action frustrates the organization's goals and required the organization "to expend resources in representing clients they otherwise would spend in other ways." *Fair housing of Marin v. Combs*, 285 F.3d 899, 904-05 (9th Cir. 2002). To establish organizational standing, the plaintiff must established two factors: "(1) frustration of its organizational mission; and (2) diversion of its

**MEMORANDUM DECISION AND ORDER - 11**

resources to combat the particular housing discrimination in question." *Smith v. Pac. Properties & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). Moreover, the Ninth Circuit has made clear that "standing must be established independent of the lawsuit filed by the plaintiff." *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001).

In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the United States Supreme Court addressed organizational standing in the fair housing context. In that case, the Court held that the fair housing organization demonstrated standing because the defendants' discriminatory practices "have perceptibly impaired [the organization's] ability to provide counseling and referral services for low- and moderate-income homeseekers." *Id*. at 39. The Court further found that "[s]uch concrete and demonstrable injury to the organization's activities–with the consequent drain on the organization's resources–constitutes far more than simply a setback to the organization's abstract social interests." *Id*.

Here, in its Verified Complaint, IFHC alleges that it "has suffered damages as the result of the Defendant's actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of the Plaintiff's mission." (*Verified Compl. and Demand for Jury Trial*, Case No. 11-cv-284, Dkt. 1.) The complaint further alleges that IFHC's mission "has been frustrated by the Defendant's practices" and that,

> In order to counteract the frustration of the Plaintiff's mission, the Plaintiff has had to devote significant resources to identify, investigate, document and take action to correct the

**MEMORANDUM DECISION AND ORDER - 12**

> Defendant's violations of the FHA, including but not limited
> to the incursion of litigation expenses. As a result, the
> Plaintiff has actually diverted resources from other fair
> housing-related activities, including fair housing education
> and enforcement activities throughout the State of Idaho and
> the surrounding region.

(*Id.*) IFHC has also submitted the affidavit of Richard Mabbutt, IFHC's Executive

Director, outlining in detail the actions taken by IFHC in connection with this case and

how its involvement in the case diverted resources from other fair housing-related

activities. (*Aff. of Richard Mabbutt in Sup. of Resp. to Def.'s Mot. for Sum. J.*, Case No.

11-cv-284, Dkt. 30-3.) The above allegations, supported by the affidavit of Richard

Mabbutt, sufficiently demonstrate that IFHC has standing in this case. *See e.g.*, *Smith v.*

*Pac. Properties & Dev. Corp.*, 358 F.3d 1097 (9th Cir. 2004); *Combs*, 285 F.3d at 904.

### 3.   Effect of the District's Previous Motion for Summary Judgment in State Court

In its response to the District's motion for summary judgment, IFHC argues that

the District's motion should be treated as a motion for reconsideration because the same

arguments already were presented to the state court (and denied) prior to removal. The

District's motion for summary judgment filed in the state court and the state court's order

denying the motion are part of the record and attached to the Notice of Removal. (Case

No. 11-cv-264, Dkt. 1-6 at 43 (*Mem. in Sup. of Pet.'s Mot. for Sum. J.*); Dkt. 1-7 at 22

(*Order Denying Mot. for Sum. J.*)) While IFHC is correct that the District's motion in the

state court raised many of the same issues raised here, the state court's order denying the

**MEMORANDUM DECISION AND ORDER - 13**

motion does not provide any substantive analysis. Indeed, the order is a one paragraph

summary denial. (Dkt. 1-7 at 22.)

As the District points out, the Ninth Circuit has held that a federal judge assigned

to a removed case "must conscientiously carry out his [or her] judicial function [and] [the

judge fails to do so] if [s]he permits what [s]he believes to be a prior erroneous ruling to

control the case." *Preasau v. Prudential Ins. Co.*, 591 F.2d 74, 75-76 (9th Cir. 1979).

Treating the District's motion as a motion for reconsideration would be particularly

inappropriate in this case where the state court issued a summary denial, and the Court

has no basis on which to determine if the state court made an erroneous ruling. The

District's motion for summary judgment will not be treated as a motion for

reconsideration.

**4.      Whether the District Exceeded its Authority under Ordinance 89-2**

The District seeks an order from the Court declaring that it may readjust By the

Lake's and Haydenview's sewer fees and seek back-payment for the alleged

underpayment of capitalization and monthly O&M fees, pursuant to local Ordinance 89-

2. The District has moved for summary judgment in both cases on this issue. IFHC also

has moved for summary judgment on this issue.

Ordinance 89-2 contains the following applicable provisions:

> 3.1 <u>Assignment of Equivalent Residence Factors</u>: The Board
> has previously assigned to all pre-existing Parcels, and shall
> assign to all new Parcels an Equivalent Residence, or "ER",
> factor for purposes of determining that Parcel's . . .
> Capitalization Fee (for new Parcels), and O&M Charge (for

**MEMORANDUM DECISION AND ORDER - 14**

improved Parcels) with one (1) ER corresponding to a single-family residence. *The number of ERs attributable to a particular use shall be determined as follows*:

. . .

(b) *A single-family residence shall be one (1) ER*;

. . .

(e) Parcels improved for special uses (*other than single-family residences* ...) Shall be assigned ERs according to the potential relative waste produced, on an annualized basis, as compared to a single-family residence . . . . Notwithstanding the foregoing schedule, the Board shall have the right, where required by considerations of fairness and consistency, to assess ERs based on actual water use on an annualized basis, with two hundred fifty (250) gallons per day being deemed equivalent to one (1) ER.

(*Ordinance No. 89-2*, Case No. 2:11-cv-00284-CWD, Dkt. 23-1 at 6-7 (emphasis added).) The Ordinance provides a Non-Residential Users Equivalent Residence Schedule, which enumerates how many ERs various types of uses will be assessed. The schedule includes various types of facilities, such as Hospitals, which are assessed 0.7 ERs per bed, Boarding Houses, which are assessed .25 ERs per number of occupants, and Nursing Homes, which are assessed 0.7 ERs per bed. (*Id*. at 8.) The schedule does not contain an ER equation for "assisted care facilities."

Section 3.2 of the Ordinance, entitled "Special Circumstances," provides that "[a]ny use not covered by the above classifications shall have its ER factor determined by the Board on an individual basis, in such a manner as to approximate potential waste water service requirements." (*Id*.)

**MEMORANDUM DECISION AND ORDER - 15**

Section 3.3 provides that "[t]he Board reserves the right to adjust a particular ER factor from time to time (both with respect to collection of additional Capitalization Fees and with respect to assessment of greater or lesser O&M charges) *in the case of a substantial change in use of a particular Parcel*." (*Id*. (emphasis added).)

The District argues that, because By the Lake and Haydenview are for-profit facilities, and commercial in nature, they are not "single-family residences" under the Ordinance. Operating under this conclusion, the District re-evaluated By the Lake's and Haydenview's ER factors under Section 3.1(e) of the Ordinance, which governs special uses ("other than single-family residences"), and found that both facilities were most like a nursing home, which the Ordinance assigns 0.7 ERs per bed. The District also argues that it may adjust the ER factors for both facilities "because a 'substantial change in use' has occurred from the time that the parcel[s] w[ere] first assigned an ER factor." (*Mem. in Sup. of Def.'s Mot. for Sum. J.*, Case No. 11-cv-284, Dkt. 22 at 8.) IFHC argues in response that By the Lake and Haydenview must be classified as single-family residences within the meaning of the Ordinance, and that no substantial change in use of either property has taken place since the facilities were assessed one ER.

The issue before the Court is whether By the Lake and Haydenview are "single-family residences" within the meaning of the Ordinance. If they are, Section 3.1(b) of the Ordinance mandates that they be assessed one ER. Moreover, if the facilities are single-family residences, they are expressly excluded from the "special uses" provision contained in Section 3.1(e) of the Ordinance. Similarly, Section 3.2, which covers uses

**MEMORANDUM DECISION AND ORDER - 16**

not specified in the Ordinance, also would be inapplicable.

The Ordinance defines "Single-Family Residence" as "[a] building or condominium unit designed and used exclusively for residential purposes *by one family*." Ordinance 89-2, Section 2 (emphasis added). The Ordinance does not define "family." IFHC directs the Court to Section 9.2.2 of Kootenai County's Zoning Ordinance, which defines a family as including "eight (8) or fewer persons occupying a dwelling unit and living as a single housekeeping unit, if the occupants are mentally or physically handicapped persons or eight (8) or fewer elderly persons." Similarly, Idaho Code § 67-6531 provides that, "[f]or the purpose of any zoning law, ordinance or code, the classification 'single family dwelling' shall include any group residence in which eight (8) or fewer unrelated persons with disabilities or elderly persons reside and who are supervised at the group residence in connection with their disability or age related infirmity." I.C. § 67-6531(1).

The District argues that neither of the above provisions apply in this case, because they are limited to zoning laws. For the reasons set forth below, the Court disagrees.

Idaho Code § 67-6530 provides:

> The legislature declares that it is the policy of this state that persons with disabilities or elderly persons are entitled to live in normal residential surroundings and should not be excluded therefrom because of their disability or advanced age, and in order to achieve statewide implementation of such policy it is necessary to establish the statewide policy that the use of property for the care of eight (8) or fewer persons with disabilities or elderly persons is a residential use of such property for the purposes of local zoning.

**MEMORANDUM DECISION AND ORDER - 17**

The Idaho Code next defines "single family dwelling" as " eight (8) or fewer unrelated persons with disabilities or elderly persons reside and who are supervised at the group residence in connection with their disability or age related infirmity." I.C. § 67-6531(1). Finally, Idaho Code § 67-6532 provides that "[n]o local ordinances or local restrictions shall be applied to or required for a group residence, as defined in section 67-6531, which is not applied to or required for a single family dwelling in the same zone."

The Idaho Supreme Court interpreted the scope of section 67-6531 in *D & M Country Estate homeowners Association v. Romriel*, 59 P.3d 965 (Idaho 2002). In that case, owners of a property had attempted to convert a single-family residence into a group home for the elderly. The property at issue, however, was subject to a restrictive covenant, and the owners were prohibited from remodeling the existing home to hold up to eight elderly residents. The owners brought suit, claiming that the restrictive covenant was in violation of Idaho Code §§ 67-530 and 67-6531. The trial court held that the cited provisions only applied to "zoning laws, ordinances and similar regulations." *Id*. at 970. The Idaho Supreme Court affirmed, stating that "the reference to 'zoning' specifically excludes the statute's application to private restrictive covenants, which were not mentioned[,]" and "there is no evidence that the legislature intended a different meaning." *Id*.

In this case, unlike the scenario in *Romriel*, the challenged action was taken by a municipal entity – not a private organization applying a restrictive covenant. While the

**MEMORANDUM DECISION AND ORDER - 18**

ordinance at issue in this case is not a zoning ordinance in a strict sense, it does pertain to property use, and unlike the circumstances presented in *Romriel*, the language of the applicable provisions of the Idaho Code, read as a whole, appears broad enough to reach the District's Ordinance. For instance, one of the purposes of Idaho's Land Use and Planning Act, Idaho Code § 67-6501 *et seq.*, is "[t]o ensure that adequate public facilities and services are provided to the people at reasonable cost." I.C. § 67-6502(b).

Moreover, Section 67-6532, which was not discussed in *Romriel*, suggests that the statute's application reaches the Ordinance in this case. Specifically, Section 67-6532 addresses licenses and other requirements for the operation of group residences and states that "[n]o local ordinances or local restrictions shall be applied to required for a group residence . . . which is not applied to or required for a single family dwelling in the same zone." I.C. § 67-6532(3). Section 67-6532 covers regulations that, like the ordinance in this case, are not necessarily zoning laws. Because licences and other "standards and restrictions" applicable to group homes are not necessarily zoning laws, and the definition of family contained in Section 67-6531 applies to those types of ordinances, the Court sees no reason why the statute should not apply in this case.

Thus, the Court finds Section 67-6531 of the Idaho Code applicable in this case, which defines "single family dwelling" as " eight (8) or fewer unrelated persons with disabilities or elderly persons reside and who are supervised at the group residence in connection with their disability or age related infirmity." I.C. § 67-6531. Because there is

**MEMORANDUM DECISION AND ORDER - 19**

no dispute that Haydenview has ever been licensed to house, or housed, more than eight elderly or disabled residents, it should have been classified as a single-family residence within the meaning of Ordinance 89-2, and the District should not have deemed the facility a non-residential use simply because the facility is for-profit. The Idaho Code makes no reference to whether the group home in question is for-profit or non-profit.

It is undisputed that the District began providing services to Haydenview in 1987 and, at that time, the property was being used as a single family residence and assessed one ER. Because the definition of single-family residence encompasses the Haydenview assisted care facility, there cannot have been any "substantial change in use" warranting adjustment under the Ordinance; the property was initially assessed one ER as a single family residence and remains so as an assisted care facility with eight or fewer occupants.

By the Lake, on the other hand, is licenced to house over eight persons and admits to having historically housed eight to nine persons. Moreover, the District alleges that By the Lake currently houses twelve persons. Because the definition of single-family dwelling contained in Idaho Code § 67-6531 is confined to group homes of eight or fewer persons, By the Lake does not fall within that definition. Thus, the District may consider By the Lake a special use within the meaning of the Ordinance and assess it accordingly.

In sum, the Court finds that the District did not have the authority under Ordinance 89-2 to define Haydenview as anything other than a single-family residence (regardless of its for-profit status) and the District did have the authority to consider By the Lake a

special use.[6]

## 5.    Claims Under the Fair Housing Act

IFHC claims that the District's actions in this case – increasing the assisted care

facilities' sewer fees and demanding back-payments in excess of $100,000 – constituted

discrimination under the Fair Housing Act ("FHA") and that the District failed to grant

By the Lake and Haydenview a reasonable accommodation as required by the FHA.

IFHC also claims that the demand letters sent by the District to By the Lake and

Haydenview constituted discriminatory notices or statements within the meaning of the

FHA and that the District's actions constituted interference, coercion or intimidation in

violation of 42 U.S.C. § 3617. IFHC has filed a motion for summary judgment on all of

the above issues. The District also has moved for summary judgment, arguing that IFHC

has not, and cannot, set forth a prima facie case of discrimination.

The FHA makes it illegal to "discriminate against any person in the terms,

conditions, or privileges of sale or rental of a dwelling, or in the provision of services or

facilities in connection with such dwelling, because of a handicap." 42 U.S.C. §

3604(f)(2). Under 42 U.S.C. § 3604(f)(3)(B), discrimination includes "a refusal to make

reasonable accommodations in rules, policies, practices, or services, when such

---

[6] To clarify the scope of the Court's ruling, under Idaho Code § 67-6532, group homes with eight or fewer disabled or elderly residents must be treated the same as other single-family residences. Nothing in this order prohibits the District from implementing a program allowing for the assessment of sewer fees based upon actual usage, but such a program (instituted through an ordinance or otherwise) must apply to *all* single-family residences.

**MEMORANDUM DECISION AND ORDER - 21**

accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." The Department of Housing and Urban Development ("HUD") and the Department of Justice have also made clear that "[t]he Fair Housing Act makes it unlawful . . . to utilize land use policies or actions that treat groups of persons with disabilities less favorably than groups of non-disabled persons [and] [t]o refuse to make reasonable accommodations in land use and zoning policies and procedures where such accommodations may be necessary to afford persons or groups of persons with disabilities an equal opportunity to use and enjoy housing." Joint Statement of the Dept. of Justice and the Dept. of Housing and Urban Development, *Group Homes, Local Land Use, and the Fair Housing Act*, Aug. 18, 1999.

Federal courts have recognized three general types of claims under the FHA: (1) intentional discrimination claims (also called disparate treatment claims); (2) disparate impact claims; and (3) claims that a defendant refused to grant a protected person or persons a reasonable accommodation. *See, e.g.*, *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170, 176 (3d Cir. 2005). In this case, IFHC seeks relief under all three theories. Each will be addressed below.

A.      *Disparate treatment*

To prevail on a disparate treatment claim, the plaintiff must demonstrate that the challenged regulation or policy singles out a protected group (in this case, the disabled) and applies different rules to them because of their protected trait. *See Community House,*

*Inc. v. City of Boise*, 490 F.3d 1041, 1048 (9th Cir. 2007). The challenged regulation or policy must be discriminatory on its face. At the summary judgment stage, "a plaintiff makes out a prima facie case of intentional discrimination under the [Fair Housing Act] merely by showing that a protected group has been subjected to explicitly differential – i.e. discriminatory – treatment." *Id.* at 1050 (quoting *Bangertor v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995)).

To recover under the theory of disparate treatment, "[p]roof of discriminatory motive is crucial." *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997). And, "the most fundamental element of the claim is that plaintiff must demonstrate that defendant's alleged discrimination was 'because of a handicap.'" *Wind Gap*, 421 F.3d at 178 (quoting 42 U.S.C. § 3604(f)(2)). If the plaintiff makes out a prima facie case of intentional discrimination – showing that the policy or practice singles out a protected group – the analysis then turns to the defendant's justification for the policy. *See Community House*, 490 F.3d at 1051. If the policy was not implemented "because of" the protected trait, the plaintiff's claim must fail.

As explained more fully below, the Court finds that neither party is entitled to summary judgment on this issue. Contrary to the District's argument, IFHC has set forth a prima facie case of disparate treatment by presenting evidence that the District singled out By the Lake and Haydenview (both of which house disabled residents). However, disputed material facts exist as to whether the District took the allegedly discriminatory

**MEMORANDUM DECISION AND ORDER - 23**

actions "because of" the assisted care facilities' residents' protected status. In other words, the critical question of discriminatory motive is one that cannot be decided at this stage in the proceedings and must be reserved for the finder of fact.

The District relies heavily on the Third Circuit's decision in *Community Services, Inc. v. Wind Gap Municipal Authority*, 421 F.3d 170 (3d Cir. 2005), for the proposition that IFHC has not made out a case of disparate treatment. In that case, the municipal authority increased sewer rates for "*personal care homes*" and the plaintiff alleged that the increase was facially discriminatory. The district court agreed with the plaintiff and granted summary judgment in its favor. The Third Circuit reversed, finding that the phrase "personal care homes" "has nothing to do with handicapped or disabled status . . . [and] [w]ithout *any* context to inform our interpretation of this term, 'personal care home' could fairly be used to describe any number of facilities providing services to residents who may not necessarily have, have had, or be regarded as having a physical or mental impairment that substantially limits a major life activity under the FHAA definition of 'handicap.'" *Id*. at 179 (emphasis in original). The court held that the phrase "personal care home" "could include a home where the elderly; juveniles (including juvenile delinquents, abused or neglected children, or orphans); the homeless; battered women; or ex-criminal offenders would be cared for." *Id*. Given this reasoning, the court reversed the district court's ruling that plaintiff was entitled to summary judgment and further held that, because the plaintiff had presented no evidence of a discriminatory animus, the

**MEMORANDUM DECISION AND ORDER - 24**

municipal entity was entitled to summary judgment. *Id*. at 184.

IFHC points out that, unlike the facts before the court in the *Wind Gap* case, the Court in this case has more context to inform its interpretation of "assisted care facility." Specifically, IFHC notes that the District used "nursing home" or "hospital" as the basis for making its ER determination rather than "boarding house," which also is a type of use identified in the Ordinance. Specifically, in its demand letters to By the Lake and Haydenview, the District stated that, "[a]lthough the Schedule does not provide for assisted care facilities . . . [it does] provide[] a calculation for the ER factor to be attributed to substantially similar facilities, i.e., a nursing home or a hospital." (*Aff. of Kathleen Chmura*, Dkt. 27-1 at 8.) The District also stated that "[t]he Board has determined that the nursing home use would be an appropriate ER factor to be attributed to your commercial facility." (*Id*.) The inference is that the District's classification excludes the types of group living identified by the *Wind Gap* court that were not based on some mental or physical infirmity, such as homes for juvenile delinquents, orphans, or the homeless.

The Court agrees with IFHC that, even if it were controlling, the Third Circuit's ruling in the *Wind Gap* case would not require summary judgment in favor of the District on this issue. Unlike the *Wind Gap* case, the District's letters provide context from which the Court may define "assisted care facility." Indeed, the District itself has indicated that the assisted care facilities in this case are "substantially similar" to a nursing home and

**MEMORANDUM DECISION AND ORDER - 25**

hospital. Given this context, the Court cannot conclude as a matter of law, as the Third

Circuit did in the *Wind Gap* case, that the term "assisted care facility" "has nothing to do

with handicapped or disabled status." *Wind Gap Municipal Authority*, 421 F.3d at 179.

Based on the above, the Court finds that neither party is entitled to summary

judgment. Looking at the District's motion, and viewing the facts in the light most

favorable to By the Lake, Haydenview, and IFHC, the assessment of sewer fees directed

at "licenced assisted care facilities" indicates that the District singled out persons with

physical or mental impairments. This sufficiently sets forth a prima facie case for

disparate treatment. *City of Boise*, 490 F.3d at 1050 ("a plaintiff makes out a prima facie

case of intentional discrimination under the [Fair Housing Act] merely by showing that a

protected group has been subjected to explicitly differential – i.e. discriminatory –

treatment.") It does not mean, however, that IFHC is entitled to summary judgment. To

prevail on an intentional discrimination claim, the plaintiff must prove that the disparate

treatment was done "because of" a protected trait. Here, the District contends that it

increased By the Lake and Haydenview's sewer services because of their commercial

status, not based upon the facilities' residents' impairments. Because disputed material

facts exist on this issue, IFHC is not entitled to summary judgment. Both parties' motions

for summary judgment will therefore be denied.

**MEMORANDUM DECISION AND ORDER - 26**

**B.**     *Disparate Impact*

IFHC claims that, "[e]ven if th[e] Court finds that the [District] has not engaged in disparate treatment of the assisted care facilities at issue in violation of the FHA, the undisputed evidence indicates that the [District's] conduct has a disparate impact on said facilities." (*IFHC's Mem. in Sup. of Mot. for Sum. J.* at 13, Case No. 2:11-cv-00284-CWD, Dkt. 28.) Both IFHC and the District have moved for summary judgment on this issue. For the reasons that follow, the Court finds that the District is entitled to summary judgment on this issue.

To make out a prima facie case of disparate impact, a plaintiff must demonstrate "(1) the occurrence of certain outwardly neutral practices; and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.2d 739, 745 (9th Cir. 1996). "When a motion for summary judgment is involved, a prima facie case refers to the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue." *Palmer v. U.S.*, 794 F.2d 534, 537 (9th Cir. 1986) (quoting *Moore v. Hughes helicopters, Inc.*, 708 F.2d 475, 482 (9th Cir. 1983).)

The District argues that IFHC has not produced any evidence related to the second element of the prima facie case for disparate impact: "a significant adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Pfaff*, 88 F.2d at 745. In response, IFHC argues that, if

**MEMORANDUM DECISION AND ORDER - 27**

the District is allowed to increase By the Lake and Haydenview's sewer fees, and seek back-payment for allegedly underpaid capitalization and O&M charges, the facilities will be forced to close and their disabled residents will be out of a home. In support of its argument, IFHC has submitted the Affidavits of Kathleen Chmura and Rebecca Skala, which indicate that the facilities "will be unable to continue to operate in the event that the Defendant is successful in increasing the facilit[ies'] sewer rates." (*Aff. of Kathleen Chmura in Sup. of Mot. for Sum. J.* ¶ 7, Case No. 2:11-cv-00284-CWD, Dkt. 27-1; *Aff. of Rebecca Skala in Sup. of Resp. to Def.'s Mot. for Sum. J.* ¶ 7, Case No. 2:11-cv-00284-CWD, Dkt. 30-2.)

The District argues that these affidavits should not be considered by the Court because the "Affiants offer no particular testimony or documentary evidence setting forth the facilities' expenses, profit margins, ability or inability to obtain financing to defray costs over time, or the ability or inability of the facilities to pass expenses on to the occupants," and have filed motions to strike the affidavits. (*Pet.'s Mot. to Strike* at 4, Case No. 2:11-cv-00264-CWD, Dkt. 26; *Def.'s Mot. to Strike* at 4, Case No. 2:11-cv-00284-CWD, Dkt. 36.)

Even assuming that the challenged affidavits are admissible for purposes of the Court's summary judgment analysis, and further assuming the truth of the assertion that the facilities will be required to close, the Court finds that IFHC has not submitted any evidence that would support a prima facie case for disparate impact. To establish a prima

**MEMORANDUM DECISION AND ORDER - 28**

facie case for disparate impact, the plaintiff must set forth sufficient facts showing a

"disproportionate impact on persons of a particular type produced by the defendant's

facially neutral acts or practices." *Pfaff*, 88 F.2d at 745. This requires a comparison group.

As the Second Circuit stated in *Tsombanidis v. West Haven Fire Department*, 352 F.3d

565, 575 (2d Cir. 2003), "[t]he basis for a successful disparate impact claim involves a

comparison between two groups – those affected and those unaffected by the facially

neutral policy." "This comparison must reveal that although neutral, the policy in

question imposes a 'significantly adverse or disproportionate impact' on a protected

group of individuals." *Id*. The court also stated that plaintiffs "must first identify members

of a protected group that are affected by the neutral policy and then identify similarly

situated persons who are unaffected by the policy." *Id*. at 576-77 ("To prevail on a theory

of disparate impact . . . there must be some evidence that a significant number of people

suffering the handicap need group living and that the [challenged policy] restricts a

substantial portion of similarly handicapped individuals from doing so.")

Here, IFHC has presented no evidence of a comparison group. Rather, IFHC

argues that evidence of the impact on the facilities alone, without reference to similarly

situated facilities, is enough to establish disparate impact. This is not the proper analysis.

While the impact on By the Lake and Haydenview may establish disparate treatment or a

failure on the District's part to grant a reasonable accommodation, it does not establish a

prima facie case for disparate impact. Because IFHC has failed to establish all of the

elements of its disparate impact claim, its motion for summary judgment on this issue will be denied and the District's motion for summary judgment on the issue will be granted.

**C.     *Reasonable Accommodation***

To establish a claim under the FHA for a party's failure to provide a reasonable accommodation, the plaintiff must demonstrate all of the following:

(1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h);

(2) that the defendant knew or should reasonable be expected to know of the handicap;

(3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling;

(4) that the accommodation is reasonable; and

(5) that defendant refused to make the requested accommodation.

*Dubois v. Assoc. of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).

The first two elements are undisputed. Both parties' arguments focus on the third element – that the accommodation may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling. The District argues that IFHC cannot satisfy this element because the requested accommodation – to pay lower sewer rates – is not necessary for their use and enjoyment of the facility *as handicapped persons*. In other

words, the District focuses on the financial nature of the requested accommodation and argues that such an accommodation is not related to the facilities' residents' handicapped status. The District cites cases from the Second and Seventh Circuits for the proposition that "[t]he FHAA does not elevate the rights of the handicapped poor over the rights of the non-handicapped poor." *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 302 (2d Cir. 1998); *see also*, *Hemisphere Bldg. Co., Inc. v. Village of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999).

In *Giebeler v. M & B Associates*, 343 F.3d 1143 (9th Cir. 2003), the Ninth Circuit expressly rejected the above Second and Seventh Circuit cases. 343 F.3d at 1154 ("We reject the reasoning of *Salute* and *Hemisphere*, despite the facial appeal of some of the slippery-slope reasoning of those opinions.") In *Giebeler*, a disabled individual wished to move into an apartment complex, which the individual could no longer afford because he could not work due to his disability. When he requested that the complex allow his mother, who undisputably could afford the apartment, to cosign the lease, the complex refused based on its policy against allowing cosigners.

The Ninth Circuit held that this violated the FHA's reasonable accommodation requirement, stating "that the obligation to 'accommodate' a disability can include the obligation to alter policies that can be barriers to nondisabled persons as well." *Id*. at 1151. The court of appeals did suggest, however, that there must be at least some nexus between the disability and the requested accommodation, placing significance on the fact

**MEMORANDUM DECISION AND ORDER - 31**

that the plaintiff could not afford the apartment because he lost his job due to his illness and stating that "accommodations may adjust for the practical impact of a disability, not only for the immediate manifestations of the physical or mental impairment giving rise to the disability." *Id*. at 1150.

IFHC also points out that the Ninth Circuit recognized in *U.S. v California Mobile Home Park Management Co.*, 107 F.3d 1374, 1380-81 (9th Cir. 1997) (hereinafter "*Mobile Home*"), that financial considerations do not automatically disqualify a requested accommodation. In that case, the Ninth Circuit recognized that "[t]he reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Id*. at 1380. The court also held that, in reasonable accommodation cases involving a request to waive a fee associated with housing, "a reviewing court should examine, among other things, the amount of fees imposed, the relationship between the amount of fees and the overall housing cost, the proportion of other tenants paying such fees, the importance of the fees to the landlord's overall revenues, and the importance of the fee waiver to the handicapped tenant." *Id*. at 1380-81.

By the Lake and Haydenview argue that, under the above factors, it is clear that the District's actions violated the FHA's requirement of a reasonable accommodation: the initial demand letter sought an exorbitant amount – approximately $74,000 from By the Lake and approximately $50,000 from Haydenview; the increase in fees was targeted directly at assisted care facilities; and, the facilities would cease to operate if the fees

**MEMORANDUM DECISION AND ORDER - 32**

were imposed. The District disputes the last two assertions.

By the Lake and Haydenview also argue that the Court should take into consideration other factors. Specifically, the facilities ask the Court to take into consideration the fact that the District acted in violation of Idaho law, which, as discussed above, requires group homes of eight persons or less to be treated the same as single-family residences.

The Court finds that neither party is entitled to summary judgment on this issue due to the existence of disputed material facts. For instance, the District disputes that it targeted only assisted care facilities and argues that By the Lake and Haydenview have not supplied any admissible evidence that the facilities would have to shut down if the fees were imposed. Furthermore, it is not clear that the requested accommodation – at least as to By the Lake (the facility with more than eight occupants) – was reasonable. Put a slightly different way, a reasonable fact finder may find that the District's offer to charge By the Lake for its actual usage rather than using the equivalent residence schedule contained in Ordinance 89-2 was a reasonable accommodation for the purposes of the FHA. Finally, even though the Court has determined that Haydenview was not required to pay more than one ER as a single-family residence within the meaning of the Ordinance, IFHC has not provided the Court with any authorities that this alone is sufficient to establish that the District violated the FHA as a matter of law.

**MEMORANDUM DECISION AND ORDER - 33**

**D.**   ***Discriminatory Notices or Statements***

The FHA makes it illegal to "make, print or publish . . . any notice, statement or advertisement, *with respect to the sale or rental of a dwelling* that indicates any preference, limitation, or discrimination based on . . . handicap . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c) (emphasis added). HUD regulations make clear that these prohibitions apply to "[w]ritten notices and statements includ[ing] any application, flyers, brochures, deeds, signs, banners, posters, billboards or any documents used with respect to the sale or rental of a dwelling." 24 C.F.R. § 100.75(b).

IFHC claims that the demand letters sent by the District to By the Lake and Haydenview violated the above provision. The District points out in its motion for summary judgment that IFHC omitted the language italicized above, and that the District cannot be held in violation of the provision because the demand letters were unrelated to the sale or rental of a dwelling.

The Court agrees with the District on this issue. Unlike 42 U.S.C. § 3604(f)(2), which expressly prohibits discrimination "in the provision of services" in connection with a dwelling based on handicap, § 3604(c) only prohibits notices, statements, or advertisements "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . handicap." Based upon the plain language of the statute, the Court finds that the District is entitled to judgment as a matter

**MEMORANDUM DECISION AND ORDER - 34**

of law on this issue.

###### E.    *Interference, Coercion or Intimidation*

The FHA provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by sections 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617. The Ninth Circuit has held that "[t]o establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).

IFHC suggests that the District's reassessment and attempted imposition of increased fees violated the above provision. The District argues that § 3617 is a "retaliation" claim, and that any action that violated the provision would have had to come *after* IFHC engaged in protected activity. The Court agrees. IFHC has failed to set forth what actions the District undertook *after* IFHC engaged in protected activities that could be construed as coercion, intimidation, threats, or interference within the meaning of § 3617. Recitation of the prima facie elements of a claim without sufficient factual support and legal authorities supporting the asserted claim is not sufficient to survive a motion for summary judgment. The District's motion for summary judgment will be granted on this issue.

**MEMORANDUM DECISION AND ORDER - 35**

6. **The District's Motions to Strike**

The District has filed motions to strike in both cases. (*Pet.'s Mot. to Strike*, Case No. 2:11-cv-00264-CWD, Dkt. 26; *Def.'s Mot. to Strike*, Case No. 2:11-cv-00284-CWD, Dkt. 36.) Both motions request that the Court strike statements contained in affidavits that were submitted in connection with the parties' motions for summary judgment. The statements sought to be stricken involve four areas. First, the District requests that the Court strike statements made by Joseph Skala, Rebecca Skala, and Kathleen Chmura that By the Lake and Haydenview use less sewer services than a traditional single-family residence. Second, the District requests that the Court strike statements made by Ms. Chmura and Ms. Skala concerning the facilities' inability to continue operations if the District is allowed to increase the facilities' sewer rates. Third, the District moves to strike statements concerning whether the District reviewed the facilities' water usage prior to the re-evaluation in which it was determined that the facilities had allegedly not paid their fair share. Fourth, the District moves to strike statements made by IFHC that the facilities have always been assessed as single-family residences. In response, IFHC, By the Lake and Hadenview all argue that the District's motions are procedurally improper.

The Court has recognized in previous cases that motions to strike, as contemplated by Fed. R. Civ. P. 12(f), are limited to pleadings, and that declarations filed in support of, or in opposition to, a motion for summary judgment are not pleadings. *U.S. v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (citing *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d

880, 885 (9th Cir. 1983)). Similarly, Rule 56(c) provides that "[a] party may *object* that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2) (emphasis added.) However, whether the above language authorizes or even contemplates a motion to strike objectionable material contained in affidavits supporting or opposing a motion for summary judgment need not be addressed at this time, because the challenged material was not considered by the Court in ruling upon the parties' motions for summary judgment. Even if the challenged statements were never before the Court, the ruling on the parties' motions would be no different. The District's motions to strike therefore will be denied as moot.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises,

**IT IS HEREBY ORDERED** that:

1.      The District's Motion for Summary Judgment (Dkt. 15) filed in Case No. 2:11-cv-00264-CWD is **GRANTED IN PART and DENIED IN PART**. Under Ordinance 89-2 and the Idaho Code Haydenview is required to be treated as a single-family residence. The District therefore exceeded its authority under Ordinance 89-2 when it assessed Haydenview differently than a single-family residence. The District did not exceed its authority under Ordinance 89-2 as to By the Lake. The aspects of the District's motion relating to the Fair Housing Act are addressed in the Court's rulings on the motions for summary judgment filed in Case No. 2:11-cv-00284-CWD.

**MEMORANDUM DECISION AND ORDER - 37**

2.      The District's Motion to Strike (Dkt. 26) filed in Case No. 2:11-cv-00264-CWD is **DENIED** as moot.

3.      The District's Motion for Summary Judgment (Dkt. 21) filed in Case No. 2:11-cv-00284-CWD is **GRANTED IN PART and DENIED IN PART**. The motion is denied concerning the argument that Intermountain Fair Housing Council lacks standing. Concerning Ordinance 89-2, as indicated above, the motion is granted as to the District's assessment of By the Lake and denied as to the District's assessment of Haydenview. Concerning the Fair Housing Act, the District's motion is denied as to the disparate treatment claim; granted as to the disparate impact claim; denied as to the reasonable accommodation claim; and granted as to Intermountain Fair Housing Council's claims under 42 U.S.C. §§ 3604(c) and 3617.

4.      Intermountain Fair Housing Council's Motion for Summary Judgment (Dkt. 27) filed in Case No. 2:11-cv-00284-CWD is **GRANTED IN PART and DENIED IN PART**. The motion is granted as to the issues involving the District's authority (or lack thereof in the case of Haydenview) under Ordinance 89-2. The motion is otherwise denied.

5.      The District's Motion to Strike (Dkt. 36) filed in Case No. 2:11-cv-00284-CWD is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Case Nos. 2:11-cv-00264-CWD and 2:11-cv-00284-CWD are hereby **consolidated for all purposes**. Case No. 2:11-cv-00264-CWD

**MEMORANDUM DECISION AND ORDER - 38**

shall be administratively closed and the consolidated action shall proceed under Case No.

2:11-cv-00284-CWD.



DATED: December 20, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 39**